SOUTHERN COLORADO PRESTRESS COMPANY, Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, and Ray Marshall, Secretary of Labor, Respondents.

No. 76–1974.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 25, 1978.

Decided Nov. 6, 1978.

Martin Semple, Denver, Colo. (Robert G. Good of Good & Stettner, Denver, Colo., on the brief), for petitioner.

Eric W. Cloud, Atty., Dept. of Labor, Washington, D. C. (Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Michael H. Levin, Counsel for Appellate Litigation, Allen H. Feldman, Asst. Counsel for Appellate Litigation, Marc R. Hillson, Atty., U. S. Dept. of Labor, Washington, D. C., on the brief), for respondents.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is an appeal by Southern Colorado Prestress Company (Prestress) from an order of the Occupational Safety and Health Review Commission (the Commission). In that order the Commission affirmed the decision of an administrative law judge holding that Prestress had committed a serious violation of the safety standard set forth at 29 C.F.R. § 1926.105(a) and (b)—a standard which Prestress was required to comply with by the duty provisions of the Occupational Safety and Health Act (the Act), 29 U.S.C. § 654(a). More specifically, the violation found was the company's fail-

ure to utilize safety nets at the point of erection of a prestressed concrete building where other safety devices were not in use for the protection of employees working over 25 feet above the ground.

## I

Prestress is a company engaged in the erection of buildings using prestressed concrete components. These components, including vertical columns, L-shaped horizontal perimeter beams, and "twin-T" floor slabs, are manufactured off the construction site by pouring concrete into molds over stretched steel cables. The finished components are then transported to the construction site where they are lifted to the desired height by crane and guided into place by an erection crew, employees of Prestress.

The alleged violation occurred on April 19, 1973, when Compliance Officer Hutton of the Occupational Safety and Health Administration (OSHA) inspected the site of a three-story building being erected by Prestress in Colorado Springs. Hutton observed a member of the erection crew, one Stanko, standing on a perimeter beam and manipulating a floor slab with a crowbar as it was being lowered into place. No fall protection—net, scaffolding, or other such device—was utilized at this site, though Stanko was working over 25 feet above the ground. There was a 40 mile per hour wind at the time. As a result of this inspection,

Prestress was cited by the Secretary for violation of 29 C.F.R. § 1926.750(b)(1)(ii) [1] on April 27, 1973, and the company contested the citation and proposed penalty of $600 pursuant to 29 U.S.C. § 659(a).

Following formal complaint by the Secretary to the Commission and answer by Prestress, the matter was set for hearing before an administrative law judge. A union representing Prestress employees, Carpenters Local 362, exercised its right under 29 U.S.C. § 659(c) to participate in the proceeding. At an initial hearing on October 24, 1973, the parties stated their respective positions, apparently exchanged information concerning exhibits and witnesses, and postponed actual hearing of the case until November 19, 1973.[2] Prior to that hearing, on November 1 the Secretary moved to amend his complaint and the citation to allege in addition a violation of 29 C.F.R. § 1926.-105(a) and (b).[3] This motion was granted at the hearing despite objections by Prestress on statute-of-limitations grounds.

At the hearing before the administrative law judge, the Secretary called on Compliance Officer Hutton to describe the alleged violations which he had witnessed and to give his views on the feasibility of safety nets in prestressed concrete construction. The employees' representative also adduced testimony concerning the feasibility of nets and other safety devices from a former employee of Prestress and from Jerome Williams, the OSHA Area Director who was

---

1. 29 C.F.R. § 1926.750(b)(1)(ii) reads:
   (b) *Temporary flooring—skeleton steel construction in tiered buildings.*
   (1)(i) . . .
   (ii) On buildings or structures not adaptable to temporary floors, and where scaffolds are not used, safety nets shall be installed and maintained whenever the potential fall distance exceeds two stories or 25 feet. The nets shall be hung with sufficient clearance to prevent contacts with the surface of structures below.

2. The case had originally been scheduled for full hearing on October 24, but on that date it was decided, because of the short time then available for the taking of evidence, to put off that procedure until November 19. The admin-

istrative law judge formally opened the hearing on the earlier date, however, for the recording of stipulations and other matters.

3. 29 C.F.R. § 1926.105 reads in pertinent part:
   (a) Safety nets shall be provided when workplaces are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical.
   (b) Where safety net protection is required by this part, operations shall not be undertaken until the net is in place and has been tested.

responsible for actual issuance of the citation. Williams' testimony was admitted over strenuous objections by Prestress that the witness had not been named in a pretrial list of witnesses, that Prestress was therefore unfairly surprised by the testimony, and that Williams was biased and not qualified as an expert.

At the close of this testimony, Prestress moved to dismiss the charge of a violation of 29 C.F.R. § 1926.105, arguing that the Secretary had failed to demonstrate the impracticality in the circumstances of non-net safety devices, such as safety belts, safety lines, and scaffolds. Reliance was placed on prevailing Commission precedent for a literal interpretation of .105(a) that would not require the use of nets if any of the specified non-net devices were usable—regardless of whether they were in fact used. The judge dismissed the .105 allegation on this ground.

The balance of the hearing was devoted to witnesses called by Prestress to testify as to the infeasibility of safety nets, in the context of the remaining allegation under 29 C.F.R. § 1926.750(b), and as to the inapplicability of .750(b) (entitled, in pertinent part, "skeleton steel construction") to prestressed concrete work.

Following the hearing, but before decision by the judge, the Fifth Circuit decided *Brennan v. Southern Contractors Service,* 492 F.2d 498, holding, contrary to Commission precedent, that 29 C.F.R. § 1926.105(a) requires the use of safety nets when other safety devices are not used, regardless of the practicality or impracticality of those other devices. In light of this decision the judge vacated his ruling dismissing the Secretary's .105 allegation. However, the parties waived reopening of the hearing for additional evidence on that allegation and merely filed supplemental briefs on the new issue.

In his written decision the administrative law judge held that 29 C.F.R. § 1926.-750(b)(1)(ii) applies only to steel erection, not prestressed concrete construction, and vacated that portion of the citation and complaint. The Commission later agreed with this holding, and the Secretary does not appeal this ruling.

As to the allegation under .105(a) and (b), the judge concluded that there was a serious violation,[4] citing *Brennan v. Southern Contractors Service, supra.* He found that employee Stanko had been exposed to the hazard of a fall of over 25 feet, that safety nets had not been used to protect him though the evidence showed their practicality, and that, while safety lines and belts were apparently practical to use, they were not in fact used at the site.

The Commission upheld this result. The lead opinion by Chairman Barnako found violations of § 1926.105(a) and (b) as to the areas of the building where the evidence showed it was impractical to use any of the alternative devices. Commissioner Cleary concurred in the result which was consistent with Commission precedent, but stated that the administrative law judge's ruling applying *Southern Contractors* was more sound. Commissioner Moran dissented.

On appeal Prestress argues essentially: (1) that amendment of the citation and complaint to allege violation of 29 C.F.R. § 1926.105(a) and (b) was barred by the applicable statute of limitations and further that allowing the amendment was an abuse of discretion; (2) that the testimony of OSHA Area Director Williams should have been excluded; (3) that the Secretary's case as to .105(a) and (b) failed for lack of proof by him of impracticality of non-net devices, *Southern Contractors* having been wrongly decided; and (4) that the holding of a violation of .105(a) and (b) was wrong as a matter of law, Prestress having sustained a

---

**4.** A "serious violation" of an OSHA standard shall be deemed to exist "if there is a substantial probability that death or serious physical harm could result" from the condition in question, provided that the employer knew or should have known of the presence of the violation. 29 U.S.C. § 666(j).

defense on both "impracticality" and "greater hazard" grounds.

## II

### *Amendment of the citation and the complaint*

Prestress challenges the amendment of the citation and the complaint on several grounds. Its basic premise for these arguments is that the motion to amend on November 1, 1973, came more than six months after the alleged violation on April 19, 1973, and thus such amendment was barred by the six-month limitation on the issuance of citations contained in 29 U.S.C. § 658(c).[5] Prestress says that there could be no relation back as to the amendment which added an allegation of violation of a different standard, and that it was an abuse of discretion to allow the late amendment since Prestress was prejudiced in that it had prepared to defend against one theory and then was required to change to defend against a new case calling for a different defense. Prestress contends further that reasons for the amendment were not set out in the amendment itself as required by Commission rule so that due process was denied.

Prestress gives particular emphasis to 29 U.S.C. § 658(a), which provides in part that:

. . . [e]ach citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the [Act], standard, rule, regulation, or order alleged to have been violated. . . . (Brief of Petitioner, p. 9)

Because of this provision and the Secretary's position taken at the administrative hearing that under the amendment both 29 C.F.R. § 1926.750 and § 1926.105 were being

relied on, Prestress says that a new charge and totally new citation were being pursued, in violation of the limitations provision. (Brief of Petitioner, 8–9).

The administrative law judge rejected the limitations contentions, saying (Administrative Law Judge's Decision and Order, 16–17):

Respondent's argument must be rejected since any consideration of [the limitation provision] is essentially subsidiary to the question of whether amendment was properly allowable. Federal Rule 15(c) provides in explicit terms that any amendment so long as '. . . the claim or defense asserted . . . arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading relates back to the date of the original pleading. . . .'
The original conduct described in the present case involved an employee working without fall protection at a height above 25 feet. The principle of relation back applies with full force where amendments involve a change to a statute different from that originally alleged so long as both relate to the same allegedly wrongful conduct. *Tiller v. Atlantic Coast Line R. R.,* 323 U.S. 574 [65 S.Ct. 421, 89 L.Ed. 465] (1945); *Mach v. Pennsylvania R. R.,* [D.C.] 198 F.Supp. 471 (1960). What would be true for statutes is also true for regulations. (footnote omitted).

█ We must agree with the reasoning of the administrative law judge, which the Commission adopted. (Commission Decision, 4). It is true that, under the Act, the standard said to have been violated must be alleged in the citation.[6] Nevertheless, the citation as amended alleged the same basic facts and circumstances and complained of

---

**5.** 29 U.S.C. § 658(c) provides that "[n]o citation may be issued under this [Act] after the expiration of six months following the occurrence of any violation."

**6.** See 29 U.S.C. § 658(a), quoted n.5 above. This is a requirement not generally made of

pleadings in civil actions under the Federal Rules of Civil Procedure. Such pleadings need not allege the particular law or theory under which recovery is sought. See *Misco Leasing, Inc. v. Keller,* 490 F.2d 545, 548 (10th Cir.).

the same omission by the employer as had the original citation and complaint—that is, the failure to provide scaffolding or safety nets.[7] 29 U.S.C. § 661(f) provides in part that "[u]nless the Commission has adopted a different rule, its proceedings shall be in accordance with the Federal Rules of Civil Procedure,"[8] and these Rules have been applied specifically as to amendment procedures under the Act. *Usery v. Marquette Mfg. Co.,* 568 F.2d 902, 908 (2d Cir.). Rule 15(a) of the Federal Rules permits amendment once as a matter of right before a responsive pleading is served, and states further that after such time "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Furthermore Rule 15(c) provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

We are not persuaded by Prestress' argument that the Federal Rules are inapplicable here because the citation procedure is something foreign to ordinary civil actions covered by the Rules. (Brief for Petitioner, 11–14, Reply Brief for Petitioner, 7). As noted, both the Act and the Commission's procedural regulations provide for application of the Federal Rules unless a different rule is adopted by the Commission. In this connection Prestress relies on *Bloomfield Mechanical Contracting, Inc. v. OSHRC, et al.,* 519 F.2d 1257, 1262–63 (3d Cir.). We feel that case is not persuasive because here the administrative law judge and the Commission *did* themselves apply the relation back rule—a determination which had not been made by the Commission in *Bloomfield* and for which the Third Circuit remanded. And we do not find the procedural difficulties suggested in *Bloomfield* in applying Rule 15(c) to be present here. There was no new party being added by the amendment here as there was in *Bloomfield.* Prestress in this case had notice of the basic facts on which to negotiate with the Secretary for a mutually satisfactory disposition prior to filing of the complaint, and the reference to the additional section of the standards by the amendment did not prejudice that possible solution.

■ We are satisfied that the rulings on the amendment of the pleadings by the administrative law judge and the Commission were not in error. As noted, leave to amend is to be freely given when justice so requires. See Rule 15(a), F.R.Civ.P.; *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222. And, of course, administrative pleadings are very liberally construed and very easily amended. *Usery v. Marquette Mfg. Co., supra,* 568 F.2d at 906. The amendment made no assertion of different facts and sought only to state an additional legal theory for recovery. See *Foman v. Davis, supra,* 371 U.S. at 182, 83 S.Ct. 227. The case thus fits within the provisions of Rule 15(c) for relation back since the claim in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . ."

---

**7.** The original citation stated that, at a Colorado Springs address of 300 W. Bijou Street (Vol. VI, Original Record):

[T]he employer did not provide scaffolding or safety nets for an employee who was working at the extreme edge of an open sided, horizontal prestressed concrete and steel beam which was higher than 25 feet above the ground.

This citation alleged a serious violation under 29 C.F.R. § 1926.750(b)(1)(ii). The original complaint alleged a serious violation of the same standard occurring on April 19, 1973, and at times prior thereto, in the same terms as to the company's conduct.

The amendment to the citation and complaint as allowed essentially alleged that "the same conditions are also a [serious] violation of the standards found at" 29 C.F.R. § 1926.105(a) and (b). No new facts were alleged.

**8.** The Commission's procedural rules also provide at 29 C.F.R. § 2200.2(b):

In the absence of a specific provision, procedure shall be in accordance with the Federal Rules of Civil Procedure.

See *Tiller v. Atlantic Coast Line R. R.,* 323 U.S. 574, 580–81, 65 S.Ct. 421, 424, 89 L.Ed. 465; *Bradbury v. Dennis,* 368 F.2d 905, 908 (10th Cir.).

The claims of abuse of discretion and of prejudice to Prestress are not convincing. It is true that the amendment was not permitted until the day of the actual hearing. The company had, however, had notice of the motion and proposed amendment for over two weeks before the hearing. No continuance was sought by Prestress to prepare other evidence. And while there is a claim of prejudice, there is no actual demonstration of harm to Prestress from the amendment, and the administrative law judge cannot be said to have abused his discretion in allowing it. *R. E. B., Inc. v. Ralston Purina Co.,* 525 F.2d 749, 751–62 (10th Cir.).

■ Prestress contends further that the Secretary's motion to amend the complaint and citation violated 29 C.F.R. § 2200.-33(a)(3) of the Commission's procedural rules by failing to state the reasons for the amendment. 29 C.F.R. § 2200.33(a)(3) provides that:

> Where the Secretary seeks in his complaint to amend his citation or proposed penalty, he shall set forth the reasons for amendment and shall state with particularity the change sought.

At the initial hearing in October 1973, where their legal positions were stated by the parties, Prestress argued vigorously the inapplicability of 29 C.F.R. § 1926.-750(b)(1)(ii), the steel construction regulation. Just prior to the conclusion of that hearing the administrative law judge stated (II R. 18):

> I would also place before the parties this observation, that if based on what anybody has said this morning any party feels that any sort of amendment of pleadings might be appropriate, they had better get it done. I'm not suggesting that I see any necessity for any amendments; I'm merely saying that certain

matters have been raised, primarily by [counsel for Prestress], they've been raised today. We've got plenty of time before this hearing is recommenced; and if there are going to be any amendments, now is the time to think about them, not at trial.

In these circumstances, when the motion for the amendment came on November 1, the reasons for it were apparent. Considering the record of the October hearing together with the wording of the amendment, we cannot agree that there was any reversible error in allowing the amendment as worded to be filed.

■ Lastly, the argument that relation back works a denial of due process is untenable. The contention is that by the procedure followed the company was deprived of its statutory right to 15 days within which to decide whether to abate or contest. However, as noted earlier, the facts were not changed and the "serious violation" level of the charge remained the same. We feel that the addition of the reference to 29 C.F.R. § 1926.105 did not cause a denial of due process.

In sum, we find no error in the rulings with respect to the amendment and are convinced that they were clearly in accord with the Act and the procedural rules which apply to these proceedings.

### III

### *Admission of the testimony of Mr. Williams*

Prestress contends that there was error in the admission of the testimony of Mr. Williams, the Area Director of OSHA who was called by the Union. The company says that Williams was not mentioned in the list of witnesses on the Union's pretrial statement and that there was no other notice of his testifying so that it was unfairly surprised. Prestress also argues that Williams' testifying violated a Commission rule imposing restrictions on investigative and

prosecuting officers of OSHA, and that the witness was also biased and unqualified to testify. We find no grounds for reversal in these contentions.

■ The granting of permission to testify as a variance from a pretrial statement or order is within the discretion of the trial judge. See *Heilig v. Studebaker Corp.,* 347 F.2d 686, 690 (10th Cir.); *Meyers v. Pennypack Woods Home Ownership Association,* 559 F.2d 894, 905 (3d Cir.). While Prestress made timely objections to Williams' testifying, the record shows that ultimately the company did not seek any further opportunity to attack his testimony by evidence it was unable to present at the hearing. The judge initially asked if counsel for Prestress needed additional time to prepare cross-examination and he said that he did; counsel later reiterated this position, but suggested that he be permitted to proceed with cross-examination of Mr. Williams to the extent he could at that point, which the judge permitted. Extensive cross-examination by counsel for Prestress followed.

Later, when this hearing in November 1973 was closed, no request was made for any further opportunity to cross-examine Williams. And when the opportunity was given in April 1974 for further evidence to be introduced after the judge's ruling reinstating the § 1926.105(a) and (b) charge, following the *Southern Contractors* opinion of the Fifth Circuit, no effort was made by Prestress to put on evidence to rebut Williams' testimony, which had dealt in part with that issue. Prestress advised the judge in a supplemental brief that it had concluded that the evidence already presented was all that could be developed and that additional evidence was not available. (Administrative Law Judge's Decision and Order, 20). In these circumstances we cannot say that any surprise to Prestress in Williams' appearance was prejudicial to the company's case.

Prestress further says that Mr. Williams was prohibited from testifying by a Commission rule and that he was biased because he was the officer who issued the citation. The Commission rule relied on provides that investigative and prosecuting officers of OSHA "shall not participate or advise with respect to the report of the Judge or the Commission." 29 C.F.R. § 2200.104. We agree with the Secretary's position, however, that the rule is not a bar against such officers testifying in open hearings but instead is intended as a prohibition of *ex parte* communication by such officers with the judge or the Commission on a pending case.[9]

■ With respect to the general claim of bias, it is true that Mr. Williams was the officer responsible for issuance of the citation. Nevertheless, such an interest on the part of a witness as well as his employment relationship are merely factors going to the weight to be given his testimony, see *Evans v. United States,* 326 F.2d 827, 831 (8th Cir.), and there was no error on these grounds in permitting Williams to testify. Furthermore, there was ample testimony which the trier of fact could accept as showing the qualifications of Williams to testify as an expert and we find no abuse of discretion in the acceptance of his testimony in that capacity. See *Barnes v. Smith,* 305 F.2d 226, 232 (10th Cir.).

## IV

*The relevance of the practicality or impracticality of non-net safety devices in finding whether a violation occurred*

■ As discussed earlier, the administrative law judge sustained Prestress' motion, made at the conclusion of the Secretary's case, to dismiss the § 1926.105(a) and (b) charge for failure to prove the impracticality of non-net devices such as safety belts, ladders and the like. The judge followed

**9.** The Administrative Procedure Act has a somewhat similar general restriction on investigative and prosecuting agents which does, however, contain an express exception permitting testimony by them in public proceedings. See 5 U.S.C. § 554(d).

Commission rulings in *Drake-Willamette Joint Ventures*, 2 OSHRC 1216, 1971–73 CCH ¶ 15,655 and *Verne-Woodrow Co.*, 3 OSHRC 856, 1971–73 CCH ¶ 16271, rev'd, 494 F.2d 1181 (5th Cir.), and sustained the motion. However, prior to issuance of the judge's final decision in this case, the Fifth Circuit in *Brennan v. Southern Contractors Service*, 492 F.2d 498 (1974), rejected the Commission's interpretation of § 1926.-105(a). The judge here then applied *Southern Contractors* and vacated his dismissal of the § 1926.105(a) and (b) charge.

Prestress argues that this action by the judge was error, that the Commission's interpretation of § 1926.105(a) and not that made in *Southern Contractors* is correct, that the initial ruling of the judge was correct in holding on this record that impracticality of safety belts and other non-net devices was not proven,[10] and that the finding of a violation by the company must therefore be reversed.

We are convinced by the reasoning of *Southern Contractors*. Only the narrowest view supports the Commission's interpretation of § 1926.105(a), which is set out in note 3, *supra*. Instead we feel it only reasonable that the regulation contemplates that *one* of the listed safety devices will be used when the described danger of height is involved, unless the defenses of "impossibility" or "greater hazard" are established. From this premise the standard is simply laying down the requirement of one designated safety device—nets—if others are impractical and therefore not used. Furthermore, the standard is not intended to point out escape routes by which *no* device need

be used if one of the alternative devices can be shown to be practical even though not in fact used. As the *Southern Contractors* opinion states, *supra,* 492 F.2d at 501:

> . . . [T]he Commission's construction would eviscerate the import of the regulation and flout the purposes of the enabling legislation. The Occupational Safety & Health Act was designed to protect the health and safety of workers and to improve physical working conditions on employment premises. *See* 29 U.S.C. § 651; 1970 U.S.Code Cong. & Admin.News p. 5177. Under the Commission's interpretation, an employer unsolicitous of the safety of his employees could dodge the Act's sanctions merely by adducing evidence that a device listed in 29 C.F.R. 1926.105(a) could have been practically utilized. And under this interpretation, the regulation rather than eliciting greater responsiveness on the part of employers would condone greater neglect.

We agree that the Secretary's interpretation is reasonable, and, as the view of the promulgating authority, his interpretation is entitled to great deference. *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158.

On this basis we conclude that a violation was properly found, unless the company established the defenses of "impossibility" or "greater hazard." We turn to the questions remaining concerning those defenses.

## V

### *The special defenses of Prestress*

As defenses to the charge under § 1926.-105(a) and (b) Prestress argues that the

---

**10.** As explained earlier, the lead opinion of Chairman Barnako found against the Company on the basis that impracticality of non-net devices was established by the proof as to some areas of the building, as was the fact that safety nets could have been but were not rigged to protect the employee. Thus, under the Commission's interpretation of § 1926.105(a), the Chairman concluded that a violation was established and affirmed the administrative law judge's decision without adopting the *Southern Contractors* interpretation. (Commission Deci-

sion, 4–5). Commissioner Cleary concurred in the result, stating however that the *Southern Contractors* approach was more sound, and Commissioner Moran dissented.

Because we have the question of the correctness of *Southern Contractors* presented by the concurring opinion of Commissioner Cleary and the arguments of the parties, and because we are convinced of the soundness of the interpretation in *Southern Contractors,* we base our affirmance of the Commission's decision on that ground.

evidence establishes that safety nets were not practical to use at the point of erection in a prestress concrete structure.[11] Further the company says that it was established that erection of safety nets created a greater hazard to employees than working without nets. These demonstrated facts, it is said, warranted dismissal of the citation and the complaint.

■ These two defenses have evolved in court and Commission decisions under the Act. The "impossibility" defense has been specifically discussed in connection with the safety devices requirement of 29 C.F.R. § 1926.105(a). *E. g., United States Steel Corp. v. OSHRC et al.,* 537 F.2d 780, 782–83 (3d Cir.). The defense encompasses technological and also economic infeasibility, which is, however, narrowly construed since standards may be economically feasible within the meaning of the Act although financially burdensome. See *Industrial Union Department, AFL–CIO v. Hodgson,* 162 U.S.App.D.C. 331, 342, 499 F.2d 467, 478. The "greater hazard" defense has been recognized where the evidence in a particular case shows that compliance with a standard would be less safe than an existing work practice. See *Industrial Steel Erectors, Inc.,* 6 OSHRC 154, 1973–74 CCH ¶ 17136. In both instances the company has the burden of proof to establish the defenses with respect to charges of violation of specific duties standards. See *Ace Sheeting & Repair Co. v. OSHRC,* 555 F.2d 439, 441–42 (5th Cir.); *Atlantic & Gulf Stevedores, Inc. v. OSHRC,* 534 F.2d 541, 555–56 (3d Cir.); *Industrial Steel Erectors, Inc., supra.*

■ The administrative law judge found that nets supported by struts or other devices projecting from vertical columns can be connected to such columns by means of brackets; that nets can be raised by crane and fastened by workers without significant exposure to hazards of falling;

that such use of nets is a known safety technique. And while the time involved in net erection would increase labor costs and crane rental expense, the judge rejected the claim that use of nets would mean taking approximately twice as long to erect the building as would be required otherwise. Likewise, the judge ruled against the company on the "greater hazard" issue, finding that nets could be set up at either end of the building without significant exposure to employees, particularly when contrasted with the exposure existing without nets. He also rejected the assertion that the presence of nets extending eight feet beyond the edge of the building would make the job of lifting slabs more hazardous, although he accepted the explanation that prestressed pieces are usually loaded close to the exterior of the structure. (Administrative Law Judge Decision and Order, 11–12, 22–24). The Commission implicitly adopted these findings, concluding that nets could be and were not rigged to protect the employee. (Commission Decision, 4).

■ The Commission's fact findings are conclusive if supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 660(a); *United States Steel Corp. v. OSHRC et al., supra,* 537 F.2d at 782. We are satisfied that there is such support for these findings. There was a conflict in the testimony of the experts, notably the disagreement between the company's witness, Mr. Cooper, and the Union's witness, Mr. Williams. The testimony of Williams, concerning the feasibility of nets erected by various means, was apparently given the greater weight. (*E. g.,* IV R. 248–254). Again, the finding against the company on economic infeasibility is supported, particularly in view of the strict standard to be applied. See *Industrial Union Department, AFL–CIO v. Hodgson, supra,* 499 F.2d at 478. We are likewise persuaded that the record supports the find-

---

11. Prestress argues this point in terms of safety nets being "impractical" to use in prestressed concrete construction. However, actual impossibility is required to be shown under the cases cited and we will treat the argument as asserting this defense.

**1352**

ings rejecting the "greater hazard" defense, for example by testimony of means of protecting workers during erection of safety nets. (*E. g.,* IV R. 226--28, 254, 288--294).

We have considered materials submitted by the parties after argument, although we are doubtful they should be considered because in effect they are expressions of opinions by state and federal agency personnel in different circumstances and are outside the record. However, even if competent for us to consider, these materials do not demonstrate error in the Commission's findings on our record.[12]

In sum, we find no prejudicial error in the proceedings in the Commission and accordingly for the reasons stated its decision is

AFFIRMED.

---

12. While there were objections to some of these materials we are ordering them all filed but are not persuaded by them.