**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 26, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LYNDA MCCLELLAND,

      Plaintiff-Appellant,

v.

DELUXE FINANCIAL SERVICES,
INC.,

      Defendant-Appellee.

No. 08-3258
(D.C. No. 2:05-CV-02137-CM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **BALDOCK**, and **SILER**,[**] Circuit Judges.

      Federal Rule of Civil Procedure 15(c) provides that, for purposes of the

statute of limitations, a subsequently amended complaint may "relate back" to the

date of the filing of an earlier complaint in certain circumstances. Plaintiff-

Appellant Lynda McClelland seeks to use Rule 15(c) to prevent the statute of

limitations from barring her discrimination suit against Defendant-Appellee

Deluxe Financial Services, Inc. ("Deluxe"). Because we conclude that the

---

[*]     This Order and Judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

[**]     The Honorable Eugene E. Siler, United States Circuit Judge for the
United States Court of Appeals for the Sixth Circuit, sitting by designation.

relevant amended complaint does not arise out of the same "conduct, transaction, or occurrence set out . . . in the initial pleading," Fed. R. Civ. P. 15(c)(1)(B), we hold that Ms. McClelland's amended complaint does not relate back. Accordingly, Ms. McClelland's claims are time-barred. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's dismissal of her lawsuit.

## BACKGROUND

Ms. McClelland is the final plaintiff in protracted litigation against Deluxe, involving two captioned cases, numerous named plaintiffs, and a putative class. To resolve Ms. McClelland's appeal, it is necessary to review some of this litigation's complex history. We set forth only those details relevant to the matters at hand.

### I. *Aikens v. Deluxe*

On August 23, 2001, six individuals filed suit against Deluxe, alleging that it had discriminated against them on the basis of their race in violation of 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (as amended). *See Aikens v. Deluxe Fin. Servs., Inc.*, No. Civ.A.01-2427-CM, 2005 WL 1041351 (D. Kan. Mar. 2, 2005). "All of the plaintiffs [were] either current, or former, black employees of [Deluxe]." Aplt. App. at 185 (*Aikens* Compl., filed Aug. 23, 2001). They described a specific series of allegedly discriminatory incidents at Deluxe and asserted that "[t]he defendant's treatment of the plaintiffs constitute[d] a continuous pattern

2

and practice of discrimination." *Id.* at 186. The *Aikens* plaintiffs pleaded theories of disparate treatment, hostile work environment, and retaliation. Significantly, they sought only monetary relief. *See id.* at 187–89 (seeking only "judgment against the defendant for damages in excess of $500,000.00, consisting of back pay, front pay, prejudgment interest, compensatory damages, punitive damages, attorneys fees, litigation expenses and such other and further relief as the Court deems proper"). Several weeks later, they filed a First Amended Complaint, which added three plaintiffs but otherwise left their factual allegations and legal claims unaltered.

The *Aikens* plaintiffs filed a Second Amended Complaint on March 6, 2002. The first part of the complaint was substantively identical to the first two complaints, except that the new complaint dropped any reference to the specific set of allegedly discriminatory incidents underlying the first two complaints. Under a separate heading, plaintiffs introduced claims "on behalf of all African-American persons who were denied equal pay, equal promotions and/or equal job training." *Id.* at 208 (*Aikens* Second Am. Compl., filed Mar. 6, 2002). With these putative class claims, the *Aikens* plaintiffs widened their focus to allege facility-wide and upper-management-level discrimination at Deluxe. In addition to the claims of disparate treatment, hostile work environment, and retaliation retained by the individual plaintiffs, the *Aikens* plaintiffs stated four claims on behalf of the class. First, they asserted a broad-sweeping claim under 42 U.S.C. § 1981,

3

which averred that Deluxe "intentionally discriminated . . . by making promotion and hiring decisions based upon race, by denying the Plaintiffs and all class members equal pay and equal terms and conditions of employment, and by maintaining a pervasive atmosphere perpetuating discriminatory treatment." *Id.* at 215. The three other discrimination claims brought on behalf of the class, which presumably were grounded on Title VII, pertained to compensation, promotion, and hiring. Although the four class claims expressly charged Deluxe with "intentionally discriminat[ing] against Plaintiffs, and all class members," *id.*, with respect to the compensation and promotion claims, the Second Amended Complaint also briefly averred that Deluxe's "conduct . . . has a disparate impact on African-American employees, including Representative Plaintiffs," *id.* at 216. On behalf of the class, plaintiffs sought declaratory, injunctive, and monetary relief. On March 1, 2004, the *Aikens* plaintiffs filed a motion for class certification.

During the next year, the parties engaged in "intensified efforts" to resolve the dispute outside of litigation through mediation. *Aikens*, 2005 WL 1041351, at *2. The efforts were successful, as "[e]ach of the individual plaintiffs agreed to dismiss their individual and class claims in settlement of the litigation." *Id.* The district court concluded that the settlements and their accompanying stipulations of dismissal resolved all pending claims in the case, and accordingly denied the pending class-certification motion as moot. *Id.* at *6. In justifying this ruling,

4

the district court noted that the dismissal would not prejudice absent members of the putative class:

> It is undisputed that claims of the putative class are tolled during pendency of the class certification. *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354–55 (1983) (holding that the commencement of a class action suspends the applicable statute of limitations for all asserted members of the putative class until a class certification decision is made). Thus, the absent class members may file separate actions to protect their claims within any time remaining in the applicable statute of limitations.

*Id.* at \*5. The *Aikens* suit was dismissed on March 2, 2005.

## II.     *Webb v. Deluxe*

On April 11, 2005, a new set of individual plaintiffs initiated the lawsuit *Webb v. Deluxe Financial Services, Inc.* Like the plaintiffs in *Aikens*, the *Webb* plaintiffs alleged that Deluxe had engaged in a pattern and practice of racial discrimination. Like the plaintiffs in *Aikens*, they raised claims of disparate treatment, hostile work environment, retaliation, and other general claims under 42 U.S.C. § 1981. They did *not*, however, aver class claims. The *Webb* plaintiffs sought declaratory, injunctive, and monetary relief. Ms. McClelland joined the *Webb* suit on April 19, 2005, with the filing of the First Amended Complaint.

Deluxe moved for summary judgment, asserting that the claims of several *Webb* plaintiffs—including Ms. McClelland—were barred by the applicable statute of limitations. Consistent with the district court's statements in dismissing the *Aikens* suit, Deluxe acknowledged that the putative class action in *Aikens*

5

tolled the statute of limitations for *some* of the *Webb* plaintiffs.  But it contended

that the four-year statute of limitations on Ms. McClelland's claims expired

before the *Aikens* class claims were filed on March 6, 2002.  Thus, according to

Deluxe, Ms. McClelland had nothing for the *Aikens* class claims to toll.

In response, Ms. McClelland did not dispute that, counting back to the date

of the Second Amended Complaint in *Aikens*, her claims were not timely.

However, she argued that, under Federal Rule of Civil Procedure 15(c), the

Second Amended Complaint should relate back to the initial Complaint in *Aikens*.

Ms. McClelland argued that, counting back from the date of the initial Complaint,

rather than the Second Amended Complaint, her claims were timely.

The district court granted Deluxe's motion for summary judgment.  As to

the issue of whether the Second Amended Complaint related back, it stated:

> The *Aikens* plaintiffs first alleged a class action suit in the
> Second Amended Complaint, which they filed on March 6, 2002.
> While it is arguable whether this complaint relates back to the
> first complaint under Federal Rule of Civil Procedure 15(c), such
> an analysis is unnecessary for the court's present decision.  This
> court denied class certification on March 2, 2005.  For this
> decision, the court considers the statute of limitations for putative
> class members tolled from at least March 6, 2002 to March 2,
> 2005.

*Id.* at 242 (Mem. & Order, filed Sept. 22, 2006) (citations omitted).  It is not clear

why the district court deemed the relation-back analysis unnecessary.  However,

operating on the view that the limitations period was four years, and taking into

account the almost three-year tolling period, the district court concluded that "any

6

claim regarding employment practices" could not have accrued before mid-April 1998, because otherwise it "would be barred regardless of its association with the *Aikens* case." *Id.* at 243. In other words, the court reasoned that the claim must have accrued in or after mid-April 1998 in order to fall within the limitations period. Because Ms. McClelland stopped working at Deluxe on March 2, 1998, the district court concluded that her claims were barred by the statute of limitations.

Ms. McClelland later argued that the district court should return to the relation-back question because it had not actually decided the issue, but the court rejected her arguments on procedural grounds. The court then granted final judgment to Deluxe on Ms. McClelland's claims. Ms. McClelland submitted a timely notice of appeal.

## DISCUSSION

Although Ms. McClelland's appeal implicates several significant issues, we need only resolve one. Specifically, Ms. McClelland argues that her claims against Deluxe are timely because the Second Amended Complaint in *Aikens* relates back under Rule 15(c) to the initial *Aikens* Complaint. We disagree. Thus, we hold that Ms. McClelland's claims are barred by the statute of limitations.

## I. Standard of Review

7

We review de novo the district court's grant of summary judgment, applying the same legal standard employed by the district court. *See, e.g.*, *Narotzky v. Natrona Cnty. Mem'l Hosp. Bd. of Trs.*, 610 F.3d 558, 565 (10th Cir. 2010). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, we construe the facts in the light most favorable to Ms. McClelland, the non-moving party. *See, e.g.*, *Kannady v. City of Kiowa*, 590 F.3d 1161, 1168–69 (10th Cir. 2010). Further, "[w]e review de novo the district court's application of Rule 15(c) to undisputed facts, a 'purely legal interpretation.'" *Garrett v. Fleming*, 362 F.3d 692, 695 (10th Cir. 2004) (quoting *Slade v. U.S. Postal Serv.*, 875 F.2d 814, 815 (10th Cir. 1989)); *cf. Sawtell v. E.I. du Pont de Nemours & Co., Inc.*, 22 F.3d 248, 253 (10th Cir. 1994) ("If the district court's refusal to toll the statute of limitations resides in the grant of summary judgment, we review the refusal de novo.").

## II.    Ms. McClelland's Claim Is Not Timely

As the district court noted, the Supreme Court has long held "that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). Such a rule, the Supreme Court stated, comports with

8

the fairness principles underlying limitations periods because "a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 554–55; *accord State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1228–30 (10th Cir. 2008); *Joseph v. Wiles*, 223 F.3d 1155, 1166–68 (10th Cir. 2000); *see Parker*, 462 U.S. at 354 ("Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied."). Thus, assuming, *arguendo*, that she is a member of the putative *Aikens* class, we may further assume that Ms. McClelland's statute of limitations was tolled from the date of the filing of the Second Amended Complaint in *Aikens*—when the class claims were first asserted—to the date when the class claims were denied.

The issue before us is whether Ms. McClelland is entitled to *additional* tolling by operation of Federal Rule of Civil Procedure 15(c). She argues that, under Rule 15(c), the Second Amended Complaint in *Aikens* should be found to relate back to the initial *Aikens* Complaint, and, thus, that she is entitled to class tolling all the way back to the date of that initial Complaint.[1] If the Second

---

[1] Deluxe categorically objects to this proposed maneuver, contending that "[t]olling and the relation back doctrine are analytically distinct," Aplee. Br. at 28, and that it would be improper to use relation back to extend the *American Pipe* tolling period. We need not definitively decide whether it is appropriate to

9

Amended Complaint relates back, Ms. McClelland contends that her claims are timely. If it does not, there is no dispute that her claims are barred.

## A. Relation Back Under Rule 15(c)[2]

Rule 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). "Relation back is intimately connected with the policy of the statute of limitations." Fed. R. Civ. P. 15 advisory committee's note (1966). As the Supreme Court has stated,

---

extend *American Pipe* as Ms. McClelland asks us to do. For even if we assume, without deciding, that Ms. McClelland may use class tolling in conjunction with relation back under Rule 15(c), her claim fails because we nevertheless conclude that the Second Amended Complaint in *Aikens* does not relate back.

[2]      As noted above, the district court did not explicitly hold that the Second Amended Complaint did not relate back; rather, the court deemed it unnecessary to consider the issue and then refused Ms. McClelland's request to reconsider this decision. However, because this legal issue was litigated before the district court and has been fully briefed by the parties before us, we do not hesitate to resolve this appeal on the relation-back issue. *See, e.g.*, *Prison Legal News v. Exec. Office of the U.S. Attorneys*, 628 F.3d 1243, 1251 (10th Cir. 2011) ("This court may nonetheless affirm on any ground that is supported in the record and raised on appeal."); *Shroff v. Spellman*, 604 F.3d 1179, 1187 n.4 (10th Cir. 2010) ("[W]e may 'affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.'" (quoting *Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 876 (10th Cir. 2001))); *Bixler v. Foster*, 596 F.3d 751, 760 (10th Cir. 2010) ("Although the district court did not rely on this ground, 'we may affirm on any grounds supported by the record.' Defendants raised this ground in the district court, thus providing plaintiffs an opportunity to address it." (citation omitted) (quoting *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001))).

the purpose of relation back is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.*, 130 S. Ct. 2485, 2494 (2010). Though a potential defendant has a "strong interest in repose," repose should not be a "windfall" for a defendant who possesses sufficient notice of impending claims. *Id.* "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cnty. Welcome Cntr. v. Brown*, 466 U.S. 147, 149 n.3 (1984).[3] The same general standard of notice

---

[3] The Fifth Circuit's discussion of the relation-back doctrine is noteworthy:

> Relation back is intimately connected with the policy of the statute of limitations. The policies underlying statutes of limitations—evidentiary concerns and repose—require that a plaintiff (1) commence suit (preserving the evidence) and (2) furnish the defendant notice of the suit and its claims (preventing repose from vesting). When Rule 15(c) is satisfied, neither of these policies is impinged because the plaintiff commenced suit before the limitations period lapsed and the defendant knew or should have known of the suit and the claims, allowing him to preserve his evidence. In such a circumstance, at least according to the drafters of the Rules, it would work an injustice to time-bar a plaintiff's claim against a particular defendant not earlier named or a specific claim not earlier pleaded.

*Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 277 (5th Cir.) (footnotes omitted) (quoting Fed. R. Civ. P. 15 advisory committee's notes) (internal quotation marks omitted), *cert. denied*, 130 S. Ct. 756 (2009).

11

applies regardless of whether a litigant seeks to add defendants, plaintiffs, or claims. *See, e.g.*, Fed. R. Civ. P. 15 advisory committee's note.

Because it can be challenging to give life to the general language of Rule 15(c), we canvas some of our salient cases to illuminate the manner in which we have applied the relation-back concept. In *Gilles v. United States*, 906 F.2d 1386 (10th Cir. 1990) (en banc), the district court concluded that Mr. Gilles's amended complaint did not relate back and dismissed his suit as untimely. Reversing on this point, we stated:

> Here both the original and amended complaints contain almost identical portions entitled "Gravamen Of Complaint," averring that the United States, through its agents and employees, negligently treated plaintiff Gilles with resulting irreparable damage to his health so that his heart condition became inoperable and his life expectancy has been considerably diminished. The two complaints are grounded on the same nucleus of operative facts, and thus, within the meaning of Rule 15(c), the claim asserted in the amended complaint arose out of the same "conduct, transaction, or occurrence . . . ."

*Id.* at 1389–90 (citation omitted) (footnote omitted).

In *Southern Colorado Prestress Co. v. Occupational Safety & Health Review Commission*, 586 F.2d 1342 (10th Cir. 1978), a construction company appealed an order of the Occupational Safety and Health Review Commission, alleging that the Commission's amended citation for workplace safety violations was untimely. *Id.* at 1346. We rejected this argument, holding that Rule 15(c) was satisfied because "the citation as amended alleged the same basic facts and

12

circumstances and complained of the same omission by the employer as had the original citation and complaint[;] that is, the failure to provide scaffolding or safety nets." *Id.* at 1346–47. We further explained:

> The original citation stated that . . . the employer did not provide scaffolding or safety nets for an employee . . . . This citation alleged a serious violation under 29 C.F.R. [§] 1926.750(b)(1)(ii) . . . . The amendment . . . essentially alleged that 'the same conditions are also a serious violation of the standards found at' 29 C.F.R. [§] 1926.105(a) and (b). No new facts were alleged.

*Id.* at 1347 n.7 (alterations omitted).

In *Superior Manufacturing Corp. v. Hessler, Manufacturing Corp.*, 267 F.2d 302 (10th Cir. 1959), a group of creditors filed a petition to compel bankruptcy proceedings, but the petition was dismissed for procedural defects. *Id.* at 303. The creditors then "filed a petition in form and substance in practical identity with the initial pleading" (but minus the procedural defects). *Id.* The debtors moved to dismiss the amended petition as untimely. We stated:

> An amended pleading is one which clarifies or amplifies a cause of action which can be identified with certainty as the same cause of action originally pleaded or attempted to be pleaded. It is a perfection of an original pleading rather than the establishment of a new cause of action. . . . Of course the intention of the bankruptcy act cannot be defeated by the filing of a skeleton petition complying with statutory requirements pleaded as generalities and then later amended to supply requisite particulars. The essential claim must be capable of determination in the original pleading and continued in the amended pleading.

*Id.* at 304 (citations omitted). "The most casual comparison" of the two pleadings in that case indicated that this test was satisfied and, therefore, that the amended pleading related back. *Id.*

In *Denver & Rio Grande Western Railroad Co. v. Clint*, 235 F.2d 445 (10th Cir. 1956), a widow sued her husband's employer for the husband's wrongful death. After the limitations period had run, she amended her complaint to change the state statute on which her claim was predicated. *Id.* at 447. In ruling on whether the amended complaint related back under Rule 15(c), we stated:

> The claim asserted in the amended complaint arose out of the same conduct and occurrence set forth, or attempted to be set forth in the original complaint. The parties were the same, the occurrence was the same, and in both pleadings the same negligence was pleaded as the proximate cause of the accident which resulted in David's death. From the beginning, Ane sought to recover damages for the death of David, her husband, caused by an explosion of the locomotive in which he was riding, which explosion was caused by the negligence of the employees of the Railroad Company, the engineer and fireman in charge of the locomotive.

*Id.* Accordingly, we held that "the amendment related back to the time of the filing of the original complaint and that, therefore, the claim asserted in the amended complaint [wa]s not barred." *Id.*

Finally, in *Kansas Milling Co. v. National Labor Relations Board*, 185 F.2d 413 (10th Cir. 1951), the appellant challenged an order of the National Labor Relations Board, contending that the Board's amended complaint alleging unfair labor practices was untimely and did not relate back to an earlier complaint. We

14

disagreed. "The first charge," we noted, "alleged in the general language of the statute that the company had interfered with, restrained and coerced its employees, discriminated in regard to hire and tenure and had refused to bargain in good faith in violation of their rights . . . ." *Id.* at 416. By comparison, the second amended charge alleged that

> the company had threatened its employees with loss of seniority and their jobs if they engaged in a strike; told them during the course of the strike that unless they returned to work they would lose their seniority and their jobs; and told them to repudiate the Union and that unless they did so they would be discharged.

*Id.* In this light, we found "nothing inconsistent in the . . . amended charge with the general allegations of the original charge. [It is] somewhat in the nature of a bill of particulars making more definite the general allegations of the original charge and thus relate[s] back to the original charge." *Id.*; *see also Am. Fid. & Cas. Co. v. All Am. Bus Lines*, 190 F.2d 234, 237 (10th Cir. 1951) ("The complaint, both before and after the substitution of Security as the party plaintiff, centered with the same impact and force around the pivotal question whether American failed to exercise good faith in declining to settle the case pending in the state court."). *Compare Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004) ("By virtue of the series of events drafted in the original Complaint, [Defendant] was unquestionably on notice that it would be held liable for every possible breach . . . occasioned by the outlined facts. The additional purported breaches particularized in the Second Amended Restated Complaint derive

15

directly from the factual circumstances adumbrated in the original Complaint."), *and Langley v. Coughlin*, 715 F. Supp. 522, 553 n.31 (S.D.N.Y. 1989) ("Although the original complaint did not contain class action allegations, it did allege all of the basic facts material to the class claims and, by its request for injunctive relief, gave adequate notice that class-wide relief might well be merited. Under these circumstances the amended complaint may be deemed to relate back to the date of filing of the original pleading even though in effect it added a large number of inmates as potential beneficiaries of plaintiffs' claims."), *with Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1133 n.16 (11th Cir. 2004) (holding that plaintiff's complaint alleging nationwide class-action claims did not relate back under Rule 15(c) when plaintiff "made the strategic decision to limit the class to individuals residing in one state, and subsequently decided—after the statute of limitations had run—that he wished to expand his suit to encompass individuals in all fifty states"), *and* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1497, at 99–104 (3d ed. 2010) ("[I]f the alteration of the original pleading is so substantial that it cannot be said that defendant was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the new claim or defense, then the amendment will not relate back . . . .").

   **B.     The *Aikens* Second Amended Complaint Does Not Relate Back**

16

Ms. McClelland argues that the Second Amended Complaint in *Aikens* should relate back to the initial Complaint. In light of the principles and precedents above, we conclude that the Complaint did not give Deluxe sufficient notice of the impending class claims. Thus, we hold that the Second Amended Complaint does not relate back.

### 1.    Initial Complaint in *Aikens*

On August 23, 2001, six individual plaintiffs filed the initial Complaint in the *Aikens* case. They alleged that Deluxe had discriminated against them based upon their race. They pleaded a general discrimination claim under 42 U.S.C. § 1981, which alleged that Deluxe discriminated against them "in regard to the conditions and privileges of their employment, including but not limited to, their rate of pay, promotion, hiring, evaluation of their work and performance, assignment of helpers, assignment of duties, and the handling of work related injuries." Aplt. App. at 187. The individual plaintiffs also pleaded specific claims for hostile work environment and retaliation under Title VII and § 1981. The Complaint noted that all of the plaintiffs had filed administrative charges with the Equal Employment Opportunity Commission ("EEOC"). The individual plaintiffs sought only money damages, not injunctive or declaratory relief.

The focus of this Complaint was a series of allegedly discriminatory incidents at Deluxe. Specifically, the Complaint stated:

17

In mid-1999, the defendant hired Lindsey Jones, a black male, to be its plant manager at the Lenexa, Kansas, facilities.

Mr. Jones was the first black plant manager hired by the defendant.

In mid-1999, the defendant also hired Sherry Vega, a Hispanic female, to be its Human Resources manager at the Lenexa, Kansas, facilities[.]

Mr. Jones, as the plant manager, together with Ms. Vega, began to initiate several plans to improve the status of minority employees at the defendant's Lenexa, Kansas, facilities.

In mid-2000, the defendant terminated the employment of Mr. Jones and Ms. Vega.

Both Mr. Jones and Ms. Vega filed complaints of discrimination with the [EEOC], which has rendered a probable cause determination in their cases.

Throughout their employment, the plaintiffs were subjected to racially discriminatory jokes, comments and depictions.

Most of the plaintiffs participated in a corporate meeting where the president of the company was present. During that meeting, plaintiffs spoke out about the problems that minority workers faced and about their feelings regarding the termination of Mr. Jones and Ms. Vega.

After the corporate meeting, the plaintiffs were called into the new plant manager's office and informed that their comments were inappropriate, and that plaintiffs and the other minority workers who spoke up did not allow the white employees an opportunity to express their concerns.

The defendant's treatment of the plaintiffs constitutes a continuous pattern and practice of discrimination.

*Id.* at 185–86 (paragraph numbers omitted).

18

Just as these allegations centered on a discrete set of incidents involving Mr. Jones and Ms. Vega, other averments in the Complaint centered on the individual plaintiffs' own experiences and impressions and did not exhibit an obvious connection with general policies and practices at Deluxe. *See, e.g.*, *id.* at 185 ("All of *the plaintiffs* were paid at a lesser pay grade and salary range than similarly situated white employees." (emphasis added)); *id.* at 187 ("Throughout the course of their employment, *the plaintiffs* were treated differently than similarly situated white employees . . . ." (emphasis added)); *id.* ("The defendant's treatment *of the plaintiffs* . . . is motivated by improper factors, including plaintiffs' race." (emphasis added)); *id.* ("As a result of the defendant's illegal and intentional conduct, *plaintiffs have suffered* serious economic losses as well as physical and emotional pain and suffering." (emphasis added)). The Complaint did aver that Deluxe's "treatment of *the plaintiffs* constitute[d] a continuous pattern and practice of discrimination." *Id.* at 186 (emphasis added). However, the Complaint's averments did not even hint that this allegedly discriminatory pattern and practice extended to *other* African American employees, beyond the named individual plaintiffs. Similarly, there was no suggestion in these averments that any such pattern and practice was formulated or orchestrated by Deluxe's high-level management or implemented throughout the Lenexa, Kansas, facility or company-wide.

### 2. Second Amended Complaint in *Aikens*

19

The *Aikens* plaintiffs filed a Second Amended Complaint on March 6, 2002. The first several pages of this complaint repeated the individual allegations made in the initial Complaint. Gone, however, was any mention of the series of events centering on Mr. Jones and Ms. Vega. Rather, under a separate heading, the complaint introduced "Class Allegations." *Id.* at 206. At a superficial level, the class averments principally focus on the same subject matter as the Complaint—i.e., Deluxe's allegedly intentional discrimination against African-American employees. Beneath these superficial similarities, however, lie very significant differences.

First, the classes proposed by the Second Amended Complaint expanded the case from six individual plaintiffs to "all African-American persons who were denied equal pay, equal promotions and/or equal job training" at Deluxe's Lenexa, Kansas, facility. *Id.* at 208. More specifically, this master class itself was divided into two subclasses. One subclass included "any African-Americans employed by Defendant in Lenexa[,] Kansas[,] from October 13, 1994, to present," and the other included "[a]ll African-Americans who attempted to obtain employment with Defendant in Lenexa[,] Kansas[,] from 1996, to present." *Id.* The complaint further indicated that "[t]he African-Americans in the [proposed] Classes . . . are so numerous that joinder of all members is impracticable. Upon information and belief, the members of this class will exceed 300 persons." *Id.* at 209.

20

Second, the Second Amended Complaint sought new forms of relief. While the initial Complaint sought *only* money damages, the Second Amended Complaint sought money damages, *as well as* declaratory and injunctive relief.

Third, and more generally, the Second Amended Complaint transformed the gravamen of the case from alleged discrimination centering on a series of discrete incidents relating to specified employees, to allegations that Deluxe discriminated against African-American employees on at least a facility-wide basis; that Deluxe did so by "maintain[ing] unconstitutional and discriminatory policies, practices, and customs of racial discrimination, including, but not limited to, promotional, training, hiring and pay practices," *id.* at 206; and that these "purposefully discriminatory employment policies, practices, and procedures [were] conceived and directed by [Deluxe's] upper management, *id.* at 215; *see also id.* at 207 ("Defendant has had actual and/or constructive notice of . . . , but has taken no constructive steps to eliminate said discriminatory policies, procedures and practices."); *id.* at 213 ("Defendant's management personnel have actual knowledge of discrimination directed against African-American employees . . . .").

In particular, the class averments implicate much of the framework of policies and practices that Deluxe has erected for dealing with employees, not only at the Lenexa facility, but also apparently throughout the company as a whole. *See id.* ("Defendant has promotion practices which are based on

21

subjective rather than objective, job-related criteria, and which are not uniformly applied to African-American and Caucasian employees."); *id.* at 214 ("There are inadequate written policies, procedures, or guidelines at [Deluxe] with respect to promotion of its employees[,] . . . render[ing] the system arbitrary, and such arbitrariness is used as pretext for denying qualified African-American employees, including Representative Plaintiffs, promotions to which they are qualified and entitled."); *id.* at 216 (alleging that Deluxe "fails to maintain a salary or pay scale which is based on objective, job-related criteria").  In this regard, although the principal focus of the Second Amended Complaint appears to have been on alleged intentional discrimination, it is at least noteworthy that the class averments hint at another theory of discrimination that does not require such intent—that is, the disparate-impact theory.  *See id.* (averring briefly with regard to the compensation and promotion class claims that Deluxe's "conduct . . . has a disparate impact on African-American employees, including Representative Plaintiffs"); *cf. Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) ("Proof of discriminatory motive . . . is not required under a disparate-impact theory."); *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1187 (10th Cir. 2006) ("In a disparate-impact claim the plaintiff is challenging an employment practice that is fair in form, but discriminatory in operation." (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1312 (10th Cir. 1999)) (internal quotation marks omitted)).

22

### 3. No Relation Back

In contending that the Second Amended Complaint relates back, Ms. McClelland focuses on two factors. First, she points out that the initial *Aikens* Complaint contained broad allegations of discrimination, including allegations that Deluxe's actions "constitute[d] a continuous pattern and practice of discrimination." Aplt. Reply Br. at 5 (emphasis omitted) (quoting *Aikens* Compl. at 5) (internal quotation marks omitted). Deluxe was thus "on notice of the nature of the substantive claims [that] it might have to defend [against]." *Id.* Second, she highlights that both the initial Complaint and the Second Amended Complaint focused on Deluxe's facility in Lenexa, Kansas. Thus, "Deluxe was on notice of the generic identities of the putative class members . . . , i.e.[,] all African-American employees who worked for Deluxe at its Lenexa, Kansas[,] facilities." *Id.*

To support her argument, Ms. McClelland relies chiefly on *Paskuly v. Marshall Field & Co.*, 646 F.2d 1210 (7th Cir. 1981). In that case, Ms. Paskuly brought suit under Title VII, "alleg[ing] that her employer, defendant Marshall Field & Company, had discriminated against her because of her sex." *Id.* at 1210–11. After the statute of limitations had run, Ms. Paskuly "filed an amended complaint seeking to transform her action into a class action on behalf of all similarly situated female employees of the defendant." *Id.* at 1211. The district court denied Marshall Field's motion to strike her class claims as untimely.

23

Reviewing for an abuse of discretion, the Seventh Circuit—in a one-page per curiam opinion—affirmed under Rule 15(c). *Id.* "We note," the court stated, "that the original complaint alleged that defendant engaged in practices that discriminated against women because of their sex; the defendant was thereby on notice that it might be required to defend its employment practices from charges of class-based discrimination." *Id.* The court also held that Ms. Paskuly's filing of a charge of discrimination with the EEOC "placed defendant on notice of the likelihood of a class-wide action later being maintained against it." *Id.* Ms. McClelland contends that we should reach a "similar conclusion" in this case. Aplt. Opening Br. at 27.

In response, Deluxe contends that relation back would be improper because it was not until the Second Amended Complaint that it was aware of "any substantive claims of putative class members." Aplee. Br. at 25. "On the contrary, [the first two *Aikens* complaints] focused exclusively on the treatment of the individual plaintiffs." *Id.* Deluxe continues:

> The original and First Amended Complaints also failed to notify Deluxe of the generic identities of the putative class members who may participate in a judgment. They contained no description of any putative class. Moreover, the pleadings expressly excluded anyone other than the identified plaintiffs from participating in the judgment. The relief demanded was exclusively individualized and reserved to the identified plaintiffs. Indeed, the pleadings contained no request for injunctive or declaratory relief that might impact someone other than the identified plaintiffs. As a result, no one other than the

24

> identified, individual *Aikens* plaintiffs could have participated in any aspect of the judgment.

*Id.* at 26 (footnote omitted) (citations omitted). Deluxe also contends—and Ms. McClelland does not dispute—that the individual plaintiffs in the initial *Aikens* Complaint all worked in Deluxe's manufacturing plants in Lenexa, Kansas. *Id.* at 26 n.5. The Second Amended Complaint, in declaring a class of "all African-American persons who were denied equal pay, equal promotions and/or equal job training" at Deluxe, Aplt. App. at 208, does not appear to limit its coverage to manufacturing employees in Lenexa, Kansas. "Without a class description," Deluxe argues, "a Complaint does not notify a defendant what evidence needs to be preserved, for what claims, for what period of time, from what facilities, and so on." Aplee. Br. at 27 n.6.

We agree with Deluxe. More specifically, we conclude that there is no relation back under Rule 15(c). Upon receiving the initial *Aikens* Complaint, a reasonable defendant in Deluxe's position certainly would have been aware that claims of discrimination were brewing among a certain subset of its employees. For example, Deluxe would have had no grounds for objecting if the initial *Aikens* plaintiffs had sought to add new legal claims based on the "basic facts and circumstances" laid out in the initial Complaint. *S. Colo. Prestress*, 586 F.2d at 1346. Nor could Deluxe reasonably claim to have been surprised by the addition of further plaintiffs who had worked under Mr. Jones and Ms. Vega, or who had

25

been involved in the series of allegedly discriminatory incidents set out in the initial Complaint. Indeed, this is precisely what occurred when three individual plaintiffs were added by the First Amended Complaint.

Unlike the First Amended Complaint, however, the Second Amended Complaint alleged something different altogether. The first two complaints involved a set of allegedly discriminatory incidents affecting a limited number of identified employees that involved, among other things, pay and promotions. And Mr. Jones and Ms. Vega, and Deluxe's allegedly adverse treatment of them, had a somewhat ill-defined nexus to these events. Yet, the Second Amended Complaint, rather than containing "almost identical" allegations, *Gilles*, 906 F.2d at 1389, instead alleged that upper management instigated discrimination and implemented it on at least a facility-wide basis, affecting more than 300 potential plaintiffs. The Second Amended Complaint was not "somewhat in the nature of a bill of particulars making more definite the general allegations of the original charge," *Kan. Milling Co.*, 185 F.2d at 416, but instead included a set of new and separate allegations implicating a wider set of facts, witnesses, and proofs. "The fact that both [complaints] involve[d] allegations of racial discrimination does not alter [this] conclusion." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008).

Ms. McClelland is correct to note that the initial Complaint and the Second Amended Complaint use the phrase "pattern and practice" in discussing the

26

alleged discrimination of Deluxe. For the purpose of notice, however, it is the content of the allegations, not the phrases employed, that matters. The allegations in the initial Complaint focused on the individual plaintiffs; it was not until the Second Amended Complaint that Deluxe was made aware of specific claims of systemic, facility-wide (and possibly company-wide) discrimination. An individual may believe—and thus allege—that an employer's treatment of him is part of a "pattern and practice" of discrimination. But without *specific* allegations of class-wide discrimination, such vague claims by individual plaintiffs are not enough to alert a defendant that class claims are on the horizon. The phrase "pattern and practice" is not a shibboleth which, once uttered, puts the defendant on alert that the limitations period is tolled. That would be grossly unfair. *See, e.g.*, *Augilar v. U.S. Immig. & Customs Enforcement*, 510 F.3d 1, 16 (1st Cir. 2007) ("While there may be qualitative as well as quantitative distinctions between class-wide pattern and practice claims, on the one hand, and individual claims, on the other hand, merely conglomerating individual claims and posturing the conglomeration as a pattern and practice claim does not have talismanic effects." (citation omitted)); *see also, e.g.*, *Mirasol v. Gutierrez*, No. 05 Civ. 6368(DC), 2006 WL 871028, at *4 (S.D.N.Y. Apr. 5, 2006) ("[A] plaintiff does not properly allege an ongoing discriminatory policy simply by invoking the magic words pattern or practice." (quoting *Blake v. Bronx Lebanon*

27

*Hosp. Ctr.*, No. 02 Civ. 3827(CBM), 2003 WL 21910867, at *5 (S.D.N.Y. Aug. 11, 2003)) (internal quotation marks omitted)).

We likewise reject Ms. McClelland's claim that Deluxe was on notice of the impending class claims simply because both the initial Complaint and the class claims of the Second Amended Complaint centered on Deluxe's facility in Lenexa, Kansas. As we noted above, Deluxe contends—and Ms. McClelland does not dispute—that the plaintiffs in the initial Complaint worked exclusively in one business division of the Lenexa facility, that is, manufacturing; yet, the class averments of the Second Amended Complaint sweep more broadly. This fact cuts against the argument that the initial Complaint would have provided Deluxe notice of the generic identities of the members of the putative class. But even without this information,[4] Ms. McClelland's argument is unpersuasive. Simply

---

[4] That all of the named plaintiffs in the initial Complaint worked in the same business division is not discernable from the face of the Complaint. We do not appear to have opined on what evidence a court may consider (in addition to the pleadings) in determining whether a defendant received notice of a particular claim. *See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 517 (6th Cir. 2007) (holding that courts may "consider extrinsic evidence in analyzing whether an amendment relates back to the original complaint"); *see also* 6A Wright et al., *supra*, § 1497, at 110 ("It has been suggested that the requisite notice must be given by the content of the original pleadings. Other cases have taken a broader view and have held that it is sufficient if the opposing party was made aware of the matters to be raised by the amendment from sources other than the pleadings. This position seems sound . . . ." (footnotes omitted)). And we need not definitively speak to the matter here because Ms. McClelland's argument is unpersuasive in any event.

28

because the two complaints focused on the same facility, without additional context, says nothing about the notice Deluxe received from the initial Complaint.

Lastly, the Seventh Circuit's short per curiam opinion in *Paskuly* does not give us pause. Its persuasive force is undercut by the cursory nature of its analysis. And, such that it is, *Paskuly*'s analysis is problematic in at least one significant respect. The Seventh Circuit stated that Ms. Paskuly's filing of a charge with the EEOC "placed defendant on notice of the likelihood of a class-wide action later being maintained against it." 646 F.2d at 1211. The court did not discuss the content of the EEOC charge in reaching this conclusion; it appears to have held that such a charge provided notice *as a categorical matter*. Ms. McClelland points out that all of the plaintiffs in the original *Aikens* Complaint filed EEOC charges against Deluxe, and she urges us to follow *Paskuly* and find that these charges gave Deluxe notice of the impending class claims. We reject the idea that the mere act of filing such a charge is sufficient *in and of itself* to provide notice to a defendant of class claims.[5] *Paskuly* does not

_____

[5] Assuming that extrinsic evidence such as *the contents* of an EEOC charge may be considered in assessing a defendant's notice for purposes of Rule 15(c), *see* discussion *supra* note 4, we do not reject out of hand the possibility that an EEOC charge—depending on its substantive allegations—might provide notice to a defendant for purposes of relation back. We need not decide the point here, however. We note that we would have no way to make such a determination in this case, for the record on appeal does not include copies of the EEOC charges filed by the *Aikens* plaintiffs, and Ms. McClelland does not indicate what the charges alleged.

29

explain why this should be so, no reason is readily apparent to us, and Ms. McClelland does not offer us one. Therefore, to the extent that *Paskuly*'s holding turns on Ms. Paskuly's *act of* filing an EEOC charge, it is dubious. And, more generally, we conclude that *Paskuly* should not guide our resolution of the relation-back issue.

## CONCLUSION

Because we conclude that the Second Amended Complaint in *Aikens* does not relate back to the initial *Aikens* Complaint, Ms. McClelland's claims against Deluxe are barred by the applicable statute of limitations. Therefore, we **AFFIRM** the district court's judgment.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge